TOWN OF KEARNY, A MUNICIPAL CORPORATION, PLAIN-
TIFF-APPELLANT, v. DIVISION OF TAX APPEALS IN
THE DEPARTMENT OF THE TREASURY OF THE STATE
OF NEW JERSEY AND DIRECTOR OF THE DIVISION
OF TAXATION IN THE DEPARTMENT OF THE TREAS-
URY OF THE STATE OF NEW JERSEY, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 10, 1960—Reargued May 19, 1960—
Decided May 27, 1960.

Before Judges Gaulkin, Sullivan and Foley.

*Mr. Robert J. McCurrie* argued the cause for the plaintiff-appellant.

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for the defendants-respondents (*Mr. David D. Furman,* Attorney General, attorney).

The opinion of the court was delivered by

GAULKIN, J. A. D.  This is an appeal from the judgment of the Division of Tax Appeals in the Department of the Treasury of the State of New Jersey (hereinafter referred to as the "Division") wherein the table of equalized valuations for the Town of Kearny promulgated by the Director of the Division of Taxation on October 1, 1959 to be used in the calculation and apportionment of distributions of State School Aid to municipalities for the fiscal year of 1960-61 was corrected by fixing and establishing the average ratio of assessed to true value of real property in Kearny at 34.81% instead of at 46.31%, the ratio for which the Town of Kearny contends.

The facts are not in dispute.  The method used by the Director of the Division of Taxation in establishing the average ratio in each municipality is by the study of sales transactions over a two-year period, ascertaining their aggregate sales prices and their aggregate assessed valuations and then calculating the ratio between the two figures.  The technique of the development of said table is stipulated to be as set forth in *City of Bayonne v. Division of Tax Appeals,* 49 *N. J. Super.* 230, 233–235 (*App. Div.* 1958).

The Town of Kearny predicates its appeal upon the refusal of the Director (which refusal the Division upheld) to use three sales transactions in determining the assessment ratio and equalized valuation for said taxing district.  The Director contends that the sales are non-usable because they fall into category No. 6 of the 27 categories of non-usable deed transactions, which categories he has established in determining assessment sales ratios.  Said category No. 6 reads as follows:

"Sales of property conveying only a portion of the assessed unit, usually referred to as apportionments, split-offs or cut-offs; for example, a parcel sold out of a larger tract where the assessment is for the larger tract."

Two of the three disputed sales were conveyances made by the E. I. du Pont de Nemours & Co. (hereinafter called

"du Pont") of all its real estate in the Town of Kearny. The third sale was by Congoleum-Nairn Inc. of three of its assessed units.

The real estate owned by du Pont consisted of 25 separately assessed units. The total assessed value of these units for 1958 was $1,372,350, being $209,200 for land and $1,163,150 for improvements. Du Pont offered all its real estate for sale because it was removing its operation from Kearny and did, in fact, sell all in these two sales. The first sale, consisting of a strip of vacant land approximating 11 acres, was made on August 11, 1958, to Carla Holding Company, Inc. for $9,500 (as calculated from the revenue stamps) and the second sale, consisting of all the remaining land and improvements, was made on September 26, 1958 to Wasco Chemical Co. Inc. for $400,000. The sale of the 11 acres to Carla Holding Co. Inc. involved only portions of three assessed units and amounted to about two-thirds of said three units. The remaining portions of the three units, plus the other 22 assessed units, were included in the sale to the Wasco Chemical Co. Inc.

The total assessed value of the three units (out of which came the parcel sold to Carla) involved in the first sale was $25,850, of which $24,950 was the land assessment and $900 was the improvement assessment. These three units represented less than 2% of the total assessment of all 25 units and the portion sold to Carla Holding Co. Inc. represented about 1% of that total.

On January 15, 1959 Congoleum-Nairn Inc. conveyed three of its assessed units to Kearnyland Inc. for $800,000. The total assessed value of these units was $471,950.

On December 15, 1958 Congoleum-Nairn Inc. had filed an application for a subdivision of two of its assessed units. The subdivision was approved on December 18, 1958 and one of the newly created units, consisting of 1.857 acres of vacant land, became Block 21 Lots 9C and 9AC with an assessment of $20,450. This is the assessed unit that was subsequently sold on January 15, 1959, together with two

other units. Through a mistake the old units that existed before the subdivision approval were erroneously listed in the 1959 "Assessment List." Therefore, when the deed dated January 15, 1959 was recorded, the 1959 tax assessment list did not show the assessment of $20,450 for lots 9C and 9AC in Block 21 and for that reason the Director concluded that the sale fell into category No. 6.

We believe Kearny's position may be summarized as follows:

1. Category No. 6 does not cover the du Pont sale to Wasco because it was not a sale "conveying only a portion of the assessed unit" but one conveying 22 assessed units plus a portion of three others.

2. If the Director had the right to treat the du Pont-Wasco sale as a "split-off," then he should have combined the Wasco and Carla sales, since they were only a month apart, together they accounted for all 25 assessed units, and the Carla sale represented only a tiny fraction of the total price and assessed valuation.

3. The Congoleum-Nairn Inc. tax apportionment had actually been made following approval of the subdivision in December 1958, and if it had been recorded in the "Assessment List" for 1959 the Director admits he would have treated the Congoleum-Nairn sale as a usable sale. Since Kearny has proved, and the Director now admits, that the failure to so record it was a mere clerical oversight, Kearny says it is entitled to have this sale included in the sampling.

Kearny contends that if it is not entitled to the foregoing as a matter of right, it is entitled to it in the reasonable exercise of the Director's discretion, because the schedule of non-usable categories concludes with this provision:

"Transfers of the foregoing nature should generally be excluded but may be used if after full investigation it clearly appears that the transaction was a sale between a willing buyer and willing seller and that it meets all other requisites of a usable sale."

Finally, Kearny as well as the Director relies on *N. J. S. A.* 54:1–35.4, which provides that "the assessment ratios as

promulgated shall be presumed to be correct, and shall not be revised or modified by the Division of Tax Appeals unless the complainant district shall present proof that upon all of the evidence available such ratio or ratios could not reasonably be justified." Kearny contends the proof which it presented established that the ratio established by the Director "could not reasonably be justified."

Kearny does not dispute the reasonableness of the Director's "Category of Non-Usable Deed Transactions," nor the propriety of the method (described in *City of Bayonne v. Division of Tax Appeals, supra*) which the Director has been following in establishing the table of equalized valuation. It complains only of their application to the above-mentioned sales. That being so, the Director's position simply is that since he must examine between 170,000 and 200,000 transactions in 567 taxing districts in a limited time, he has adopted the practical expedient of using only those sales which represent whole assessed units, so that he can quickly compare the consideration with the assessment at the time of the sale. To combine separate sales, such as those by du Pont to Wasco and Carla, would, as the Director's witness Temkin testified, "be a never-ending task. As a split-off comes in, in most cases the assessor has no assessment on it until some future date. Now, at that time when the assessor makes that apportionment and we have to go back and check it and then try to match it up with other sales of the rest of those properties that were made, we would never end. It would be an impossible task."

Kearny replies that, assuming the Director may not be required to go to the time, trouble and expense of "matching," when Kearny did give the Director the undisputed facts he should have matched the two sales and treated them as one. To this the Director replies that it is not pretended that the equalization tables are perfect; they are no more than a fair and reasonable approximation of the ,exact ratio between true value and assessments, and since that approximation is arrived at according to an artificial formula, the

formula must be applied with great rigidity. Again, as Mr. Temkin said:

"Now, here Kearny comes along, picks out two sales that we'll say for the record are advantageous to them and say we should use them. That is not being fair to the other 567 [*sic*] districts because that hasn't been done with them and there are definite cases in the rest of the State of those conditions existing.

Assuming the fact that Kearny is right, how are we going to use a uniform treatment with the other 566 taxing districts using this same approach? We never could do it. That's the reason for these 26 categories. We have to approach it in some practical manner so that we can process 170,000 transactions a year."

█ In short, a municipality has the right to prove, if it can, using the method used by the Director, or upon any other basis, that the ratio established by him "could not reasonably be justified." For example, the municipality might be able to do that by proving the actual value of numerous properties and their assessments. But a municipality may not accept the Director's formula, and his use of all but two or three sales, and then by proving the circumstances relating to those two or three sales force the Director in those cases to abandon the formula for the truth. The Director *may* do so, but he is not compelled to do so; and, in the case at bar, we perceive no abuse of discretion in this rejection of Kearny's position.

Kearny cites one instance in which the Director did "match" sales, but that was a case in which a buyer under a single contract asked for separate deeds, to his nominees, for the two parts into which he divided the property. There was nothing unusual, however, in the transaction between the seller and buyer insofar as concerns the *indicia* looked for to determine whether a sale may properly be used as a sample. It appears to have been a normal sale in the ordinary course of business between a willing buyer and a willing seller, with no special compulsion on either. Furthermore, the Director "matched" those sales only in settlement of an appeal from his contrary determination, and may have

done so because the resulting difference in ratio was less than 1%. The Director did not abuse his discretion in considering the sales at bar different—25 units for less than one-third their assessed valuation, by du Pont, because it was moving its operations from the area.

Whether the express terms of Category No. 6 cover the du Pont-Wasco sale and, if not, whether the construction by the Director that they do is semantically justified, are in our view of this case immaterial. The Director was empowered to create the category and is empowered to give its words any reasonable construction he chooses, just as he would have been authorized to insert explicit language unmistakably bearing that meaning in the category in the first place. Our function is not to decide whether the construction placed by the Director upon the words of the category is reasonable, but whether the category *as construed by him* is reasonable.

We find that it is. If the Director were ordered to take as usable every sale of one or more whole taxable units which includes a portion of another, it would involve time, expense and effort to determine how much of the true and assessed values should be allocated to the portion. In the case at bar Kearny is perfectly willing that the Director use the assessed valuation of only the 22 whole assessed units sold to Wasco to compare with the price paid by Wasco for the 22 plus the portions of the other three units—thus giving the Director the "advantage," so to speak. But what if in a similar sale in another municipality the fraction represented substantial assessed valuation? That municipality would object to the elimination of the assessed value of the fraction. In short, there could not be the quick and easy uniformity which the Director says he must have. Since this entire program is forced by the failure of nearly all municipalities to obey the law requiring them to assess at true value, and in the light of the magnitude of the Director's problem, we cannot say Category No. 6 as interpreted by him, and applied in this case, is unreasonable.

■ As to the Congoleum-Nairn sale the Director's position is substantially the same—he does not have the time or the money to go beyond the assessments as shown on the only official books which he should be required to examine. We cannot say that this is an unreasonable attitude.

Affirmed.